El Pueblo de Puerto Rico, demandante y apelado, *v.* José Barrio Fajardo, acusado y apelante.

Núm. 8499.—*Sometido:* Enero 28, 1941. *Resuelto:* Enero 31, 1941.

*Amador Ramírez Silva*, abogado del apelante; *Hon. Procurador General George A. Malcolm* y *R. A. Gómez, Fiscal del Tribunal Supremo*, abogados de El Pueblo, apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El día 14 de julio de 1939, como a las 4 p. m., el acusado apelante conducía como chófer un automóvil-guagua por un camino vecinal que conduce de la Colonia de Cañas San Francisco, en Hormigueros, a la Carretera Insular núm. 78, Km. 0, Hm. 3. Al salir de dicho camino vecinal y entrar en la carretera, la guagua conducida por el acusado chocó con una motocicleta conducida por el policía insular Luis Ramos Noriega, quien sufrió la fractura de una pierna y otras lesiones.

Se formuló denuncia contra el conductor de la guagua, el apelante, por violación del artículo 328 del Código Penal, imputándole que en el momento y sitio del accidente conducía dicho vehículo "sin la debida prudencia o circunspección y por su descuido y negligencia dejó chocar dicho vehículo con la motocicleta" y que "la falta de prudencia o circunspección, descuido y negligencia, consisten en que el aquí acusado, José Barrio Fajardo, mientras conducía dicha guagua, allí y entonces, al salir a la carretera núm. 78 por el camino que conduce a la Colonia San Francisco, no redujo la velocidad de dicho vehículo, ni dió aviso con la bocina, *klaxon* u otro aparato de alarma que se use para tal fin, lo que dió lugar al accidente."

El presente recurso, interpuesto por el acusado contra la sentencia que le condena a $100 de multa o tres meses de cárcel, se basa en dos señalamientos de error, relacionado el primero con la admisión de cierta pregunta y el segundo con la apreciación de la evidencia.

Después de declarar el testigo de cargo Ángel Ortiz, que en el momento del accidente él estaba cerca de la carre-

tera; que sintió el golpe, vió la motocicleta encima del policía y ayudó a levantar al herido; y que vió también cuando la guagua salía del callejón a la carretera, continuó así el interrogatorio:

"P.—¿Redujo la velocidad la guagua al salir a la carretera?

"R.—Si quiere que le diga, él no salía a velocidad, pero yo no pude apreciar el klaxon.

"P.—¿Usted sabe si esa guagua tocó klaxon o bocina?

"R.—Sí, señor.

"P.—Mire a ver esta firma que está puesta en esta declaración, ¿de quién es?

"R.—Es mía.

"P.—Ahora, mire a ver si recuerda si declaró en esa declaración que Ud. prestó ante el Juez de Paz de Hormigueros, el mismo día de los sucesos, 'que al salir esa guagua de allí no redujo la velocidad ni tocó klason'.

"Lic. Ramírez Silva:

"Yo me voy a oponer a la pregunta, señor juez, porque tendría primero que sentarse las bases.

"Hon. Juez:

"La corte permite la pregunta.

"Lic. Ramírez Silva:

"Tomamos excepción por los mismos fundamentos.

"P.—¿Usted declaró eso o no lo declaró en Hormigueros?

"R.—Yo vi que la guagua salió y en seguida chocó con la motocicleta.

"P.—¿Pero a qué velocidad venía?

"R.—Yo no vi a qué velocidad venía; no pude apreciar.

"Hon. Juez:

"Pero mire testigo: ¿usted no puede determinar si venía a mucha o poca velocidad; si venía despacio o si venía ligero, a regular velocidad o a mucha velocidad?

"R.—Por eso mismo es que no puedo decir . . .

"P.—Bueno; ¿tocó klaxon el de la guagua o no tocó?

"R.—No, señor, yo no pude apreciar.

"P.—¿Usted no declaró ante el Juez de Paz de Hormigueros, Sr. Cesáreo A. Rodríguez, el día 14 de julio del año pasado, esto es, el mismo día que ocurrieron los hechos, 'que al salir la guagua a la carretera no redujo la velocidad ni tocó klaxon?'

"R.—Bueno, yo declaré ante el Juez de Paz, sí, señor.

"P.—Declaró eso o no lo declaró?

"R.—Sí, señor.

"P.—Ahora, ¿qué pasó allí al salir la guagua a la carretera?

"R.—Cuando salió la guagua a la carretera yo salía de casa, y entonces venía un policía en una motocicleta y la guagua chocó con él.

"P.—¿Como a qué distancia estaba usted ahí?

"R.—Como a seis metros.

"P.—¿El de la guagua qué hizo cuando chocó con la motocicleta?

"R.—Él chocó y se quedó allí.

"P.—¿Usted no declaró ante el Juez de Paz de Hormigueros que él se había dado a la fuga?

"R.—Me parece que se quedó allí; no estoy seguro.

"HON. JUEZ:

"Ahora parece que no sabe si se quedó allí.

"P.—¿Usted no sabe decir si se quedó allí o no?

"R.—No, señor.

"Nada más. (Al márshal). Este testigo que no se vaya."

La alegación del apelante al efecto de que al tratar de tachar a dicho testigo el fiscal no se ajustó a las prescripciones del artículo 521 del Código de Enjuiciamiento Civil (artículo 159 de la Ley de Evidencia) carece de fundamento. Tratándose de manifestaciones anteriores hechas por el testigo, por escrito y bajo su firma, lo único que tenía que hacer el fiscal era enseñarle las declaraciones al testigo "antes de podérsele interrogar acerca de ellas." No encontramos que se haya errado en manera alguna en la admisión del precedente interrogatorio.

■■ Se imputa a la corte inferior el haber apreciado erróneamente la prueba. Examinémosla.

Declaró en primer término Luis Ramos Noriega, el policía lesionado, y dijo: que el día del accidente él venía en su motocicleta de San Germán hacia Hormigueros; que al llegar al callejón de San Francisco, el acusado salió a la carretera con la guagua que iba guiando; que salió a bastante velocidad y no tocó klaxon; que era una velocidad bastante exagerada; que por ese motivo el acusado se atra-

vesó, chocó con él y se dió a la fuga; que él venía en su motocicleta con toda precaución y a su derecha; que el acusado venía por su derecha, pero al llegar a la carretera dobló hacia la izquierda, en dirección hacia San Germán.

Santos Rosa, vecino de Hormigueros, declaró que en el momento del suceso se encontraba en la carretera frente a la Colonia San Francisco; que vió cuando salía la guagua de dicha colonia para la carretera y le dió a la motocicleta por la parte trasera; que la guagua ''no venía ligero, porque la virada era muy recia para él.'' Preguntado si cuando el acusado salía a la carretera tocó klaxon o bocina, respondió: ''Yo oí como un pito, cuando venía la motocicleta y salía la guagua a coger la carretera.'' Siguió declarando que él no pudo apreciar la velocidad a que venía uno y otro; que cuando el acusado vió caer al policía, siguió en la guagua sin prestarle auxilio; y que no puede decir de cuál de los dos fué el pito que él oyó.

El próximo testigo fué Ángel Ortiz, cuyo testimonio analizamos al discutir el primer señalamiento. Declaró que el camino por donde venía el acusado es de piedra y tierra con hoyos.

José Marchany Vélez declaró que vive cerca del sitio en donde ocurrió el choque; que estando frente a su casa pudo ver que la guagua salía por el callejón y al entrar a la carretera se enfrentó con la motocicleta y chocó con ella, cayendo el policía al suelo; que la guagua ''salió poco a poco, porque yo sentí un pito, y cuando salió así ya estaba el guardia debajo de la motocicleta; y que el de la guagua se fugó.

José Serra Rivera dijo que él presenció el choque entre la guagua y la motocicleta; que el acusado salía con la guagua del callejón para la carretera, por donde él venía, y al entrar a la carretera venía al mismo tiempo un policía en una motocicleta y chocó con el policía tirándolo al suelo; que la guagua venía andando bien, andando poco a poco. Preguntado por el fiscal si recordaba haber declarado ante

el juez de paz "que la guagua al entrar a la carretera no redujo la velocidad," respondió: "Bueno, sí, pero no venía muy ligero." Declaró por último que no sintió que la guagua tocara el klaxon.

Denegada la moción para la absolución perentoria del acusado, por ser insuficiente la prueba de la negligencia criminal, la defensa ofreció la declaración del sargento Busquets para probar que poco después del accidente el acusado se presentó voluntariamente en el cuartel a dar cuenta de lo ocurrido.

Conviene hacer constar que aun cuando el fiscal trató de impugnar las declaraciones de sus dos testigos Ángel Ortiz y José Serra Rivera, haciéndoles preguntas sobre las declaraciones prestadas por uno y otro ante el juez de paz, la impugnación del segundo no tuvo éxito, pues si bien admitió haber declarado anteriormente "que la guagua al entrar a la carretera no redujo la velocidad," explicó lo que había querido decir y declaró: "Bueno, sí, pero no venía muy ligero."

Para que pueda sostenerse una sentencia condenatoria por un delito de infracción del artículo 328 del Código Penal, es necesario que la prueba del Pueblo demuestre que el acusado manejó el vehículo con un grado de negligencia o descuido mayor que el que se requiere para obtener una indemnización en un caso civil. En el caso de *El Pueblo* v. *Rodríguez,* 47 D.P.R. 600, esta Corte Suprema siguió como doctrina aplicable a procesos de esta naturaleza, la sentada en el caso de *People* v. *Adams,* 124 N. E. 575, en el que la Corte Suprema de Illinois se expresó así:

". . . . Para que la negligencia sea criminal, es necesario que sea crasa o temeraria. Negligencia crasa es aquella que toca a los límites de la imprudencia, y negligencia temeraria, tal cual es aplicada al manejo de un vehículo de motor, implica un abandono positivo de las reglas de diligencia y un flemático menosprecio de sus consecuencias, según apunta Babbitt en su obra sobre Vehículos de

Motor, sección 1517. . . La responsabilidad criminal no puede estar basada en todo acto legal descuidadamente realizado, meramente porque tal descuido produzca la muerte de una persona. Para que la negligencia sea criminal, es necesario que ésta sea imprudente o temeraria y de tal naturaleza que demuestre un absoluto menosprecio de la seguridad de los demás bajo circunstancias que probablemente produzcan daño a éstos." (Citas.)

Examinada y apreciada en conjunto la prueba aportada en este caso y teniendo en cuenta las circunstancias especiales dentro de las cuales se desarrollaron los sucesos, no es ella suficiente a nuestro juicio para llevar al ánimo del juzgador la firme convicción de que el acusado apelante fué criminalmente negligente en el manejo de la guagua. La corte inferior cometió error manifiesto en su apreciación del alcance de la evidencia y *procede, por tanto, la revocación de la sentencia.*